IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 7, 2016

**WARREN HILDRED v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 11-03840       Paula L. Skahan, Judge**
_____

**No. W2015-02454-CCA-R3-PC  -  Filed April 10, 2017**
_____

The Petitioner, Warren Hildred, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief from his conviction of second degree murder and resulting seventeen-year sentence. On appeal, the Petitioner claims that he received the ineffective assistance of trial counsel. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Iclem Jaber, Memphis, Tennessee, for the appellant, Warren Hildred.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Samuel David Winnig, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On the afternoon of February 19, 2011, the Petitioner shot and killed the victim, Stephanie Brown, at his home in Memphis. State v. Warren Hildred, No. W2012-01032-CCA-R3-CD, 2013 WL 3329011, at *1 (Tenn. Crim. App. at Jackson, June 27, 2013), perm. to appeal denied, (Tenn. Nov. 13, 2013). The Petitioner and the victim had been in a relationship and had a son together but were estranged at the time of the shooting. See id. at *1, 3. At trial, an eyewitness to the crime testified that on the day of the shooting, the victim went to the Petitioner's home to get the victim's insulin medication and the battery charger for the victim's cellular telephone. Id. at *1. The victim, who was

standing on the Petitioner's front porch, asked the Petitioner through a closed, wrought-iron storm door to get her medicine. Id. The Petitioner opened the door, threw some of the victim's clothes onto the porch, and closed the door. Id. The victim knocked on the door and asked the Petitioner for her medicine and battery charger. Id. The Petitioner opened the door again and fired one gunshot at the victim, striking her in the upper abdomen. Id. at *1, 2. The victim fell on the porch, and the Petitioner went into his house and sat on his living room sofa. Id. at *1. The witness said the victim never opened the front door or stepped inside the Petitioner's house. Id.

A police officer arrived on the scene and found the victim lying on her left side on the porch. Id. at *2. The Petitioner later told the officer that the victim had tried to break into his home and that he shot her. Id. A second police officer examined the storm door and found no evidence of forced entry. Id. at *3. An investigator testified that he photographed the crime scene and that the photographs showed a glucose meter, test strips, and the victim's medicine on the porch. Id. at *2. A second eyewitness testified that none of those items were on the porch at the time of the shooting. Id.

The police arrested the Petitioner, and he gave a statement in which he said the following: The Petitioner opened the storm door, placed the victim's medicine on the porch, and locked the door. Id. at *3. The victim asked for her battery charger and "'must have gotten mad and then she started pulling on the door.'" Id. The victim "'had the look in her eyes'" and took about five steps into the house. Id. The victim had a blue object in her hand. Id. The Petitioner did not know what the victim was going to do, so he shot her. Id. The victim "'fell back out the door.'" Id.

Officer Isreal Taylor testified that he conducted a second interview with the Petitioner. Id. The Petitioner told Officer Taylor that he and the victim began arguing over her clothes, that he put her "stuff" on the porch, and that he retrieved his gun from a closet because he feared for his life. Id. at *4. The Petitioner noticed a blue, "'rag tipped' comb" in the victim's hand, and he thought she was going to use it as a weapon "'[b]ecause of previous incidents.'" Id. The Petitioner said that he meant to shoot the victim but that he did not mean to kill her. Id. After the shooting, the Petitioner put the gun on a coffee table and telephoned the Memphis Police Department's non-emergency number. Id.

The Petitioner testified at trial that the victim had been violent toward him in the past by hitting him in the head with a brick. Id. at *5. The Petitioner was hospitalized, and the victim was arrested. Id. In other incidents, the victim attempted to stab the Petitioner with a knife and shoved him against the corner of his house, tearing his rotator cuff. Id. On the day of the shooting, the victim arrived at the Petitioner's home and told him that "I'm going to show your ass something," which he took as a threat. Id. He

retrieved his handgun and shot the victim when she "'snatched'" open the door and approached him with the blue comb.  Id.  He maintained that he thought the victim was going to use the comb as a weapon and that he was trying only to wound her.  Id.  He said he called the police department's non-emergency number because he had telephoned 911 so often in the past that he had been asked not to call anymore.  Id.

At the conclusion of the Petitioner's testimony, defense counsel attempted to introduce evidence of the victim's prior conviction of reckless aggravated assault by calling the records keeper for the Shelby County Criminal Court to testify.  Id. at *6.  The State objected, and the trial court ruled the evidence inadmissible.  Id.  However, in an offer of proof, Melissa Horner testified that a 2003 affidavit of complaint alleged that the victim and Joy Jones got into a verbal altercation in Jones' residence.  Id.  The victim walked away from Jones, went downstairs, and tried to open a can of "'baby milk'" with a steak knife.  Id.  Jones entered the kitchen and began tussling with the victim, and the victim stabbed Jones under Jones' right arm.  Id.  In 2006, the victim was convicted of reckless aggravated assault.  Id.

At the close of proof, the jury convicted the Petitioner as charged of second degree murder.  Id.  On direct appeal of his conviction to this court, the Petitioner claimed that the trial court erred by refusing to allow Officer Taylor to testify about prior incidents of domestic violence between the Petitioner and the victim to show that she was the first aggressor on February 19.  Id.  He also claimed that the trial court erred by excluding evidence of the victim's prior conviction of reckless aggravated assault.  Id.

Regarding prior instances of domestic violence between the Petitioner and the victim, this court noted, "If [a] defendant is unaware of [a] victim's prior violent acts, the evidence is admissible for the sole purpose of corroborating the defendant's claim that the victim was the first aggressor."  Id. (citing State v. Ruane, 912 S.W.2d 766, 779, 781 (Tenn. Crim. App. 1995)).  However, "[i]f . . . the defendant seeks to introduce evidence showing a reasonable fear of the victim, the defendant may testify to those violent acts perpetrated by the victim of which he or she is aware."  Id. (citing Ruane, 912 S.W.2d at 779).  This court concluded that the State properly objected to Officer Taylor's testimony based on hearsay because the prior incidents of domestic violence were investigated by other officers, not Officer Taylor.  Id. at *7.  This court also stated that counsel made "no further efforts to introduce incident reports through other witnesses.  Thus, he cannot now be heard to complain about the exclusion of this evidence when he clearly abandoned his efforts to bolster the defendant's defense through the introduction of the evidence."  Id.  This court noted that although the Petitioner was unable to introduce arrest warrants or incident reports about prior acts of violence between him and the victim, he nonetheless placed the evidence before the jury through his own testimony about the acts.  Id.

- 3 -

Regarding the victim's prior conviction of reckless aggravated assault, this court explained as follows:

> [W]e first note that the defendant was unaware of either the conviction or the facts surrounding it. At trial, the defendant testified to the violence perpetrated against him at the hands of the victim. Following this testimony, defense counsel inquired as to whether the victim "had done anything to anybody else." The defendant responded, "Not that I know of." Defense counsel inquired, "Are you sure about that?", prompting an objection to leading by counsel for the State, which the trial court sustained. Defense counsel did not question the defendant further on his knowledge of any violent acts committed by the victim against others. Thus, the defendant was unaware of any prior violent acts, and any evidence of such acts could only be admitted to corroborate the defendant's position that the victim was the first aggressor. See Ruane, 912 S.W.2d 779, 781.
>
> When defense counsel later attempted to introduce evidence of the victim's prior felony conviction of reckless aggravated assault through the testimony of Ms. Horner, the State objected, and the trial court held a bench conference. Clearly, the prerequisite of proof of self-defense had been established through the testimony of the defendant. The trial court, after reviewing the circumstances surrounding the conviction, determined that the victim was not the first aggressor. "Rather than considering the record of conviction alone, the trial court must determine the underlying facts of the alleged act of aggression." [State v. Laterral Jolly, No. 02C01-9207-CR-00169, 1993 WL 523590, at *4 (Tenn. Crim. App. Dec. 15, 1993)]. The trial court determined that the admission of the conviction and its underlying facts would be "really misleading" to the jury, and the trial court effectively found that the prejudicial impact of this evidence would outweigh any probative value. We hold the trial court did not err in excluding this evidence.

Id. at *7-8. Accordingly, this court affirmed the Petitioner's conviction.

- 4 -

After our supreme court denied the Petitioner's application for permission to appeal, he filed a timely pro se petition for post-conviction relief, alleging that he received the ineffective assistance of trial counsel. The post-conviction court appointed counsel, and counsel filed an amended petition, alleging that trial counsel was ineffective because he failed to subpoena Officer Robert Tutt, the officer who investigated the victim's prior history of domestic violence against the Petitioner, to lay the proper foundation for the admissibility of the evidence and failed to subpoena Joy Jones, the victim of the 2003 reckless aggravated assault, to testify about the incident from her perspective. The petition also alleged that trial counsel was ineffective because he failed to introduce evidence of the Petitioner's clubfoot, which would have bolstered the Petitioner's claim of self-defense, and telephone records showing that the Petitioner had called 911 previously, which would have corroborated his claim of the victim's prior acts of violence against him.

At the evidentiary hearing, trial counsel testified that he did not remember how many times he met with the Petitioner but that "it was a few." The Petitioner shot the victim when she tried to enter his home. They had a "tumultuous" relationship, and the defense's theory was self-defense or reckless homicide. Counsel acknowledged he wanted to show that the victim was the first aggressor and that the Petitioner reasonably feared for his safety. Counsel and the Petitioner discussed a prior domestic violence incident between the Petitioner and the victim. Counsel tried to introduce evidence of the incident through Officer Taylor, but the trial court did not allow the evidence. Counsel said he probably could have subpoenaed the actual officer who wrote the incident report.

Counsel testified that he also tried to introduce evidence of the victim's prior conviction of reckless aggravated assault of Joy Jones through the Petitioner's testimony. However, the Petitioner "did not testify appropriately," so the trial court barred the evidence. Counsel said that the Petitioner "[a]bsolutely" knew about the 2003 incident and that the Petitioner's claim of not knowing caught him by surprise. Counsel said that he and the Petitioner had met several times, that he thought the Petitioner would testify appropriately, and that "[f]or whatever reason he did not." Counsel said that in retrospect, he probably could have called Jones to testify. In light of the trial court's ruling, though, counsel was not sure Jones' testimony would have been admissible. Counsel stated that the Petitioner was very likeable and that the Petitioner was taking care of a small child when the drug-addicted victim came to the Petitioner's home and tried to enter his home. Counsel said he thought that the Petitioner acted in self-defense and that the jury's hearing about the victim's prior conviction would have affected the verdict.

Trial counsel testified that the Petitioner "may have had a strange gait" and that he and the Petitioner discussed the Petitioner's appearance. Post-conviction counsel asked if the Petitioner's physical disability was due to the amputation of one of his big toes, and

trial counsel answered that he did not remember "any toe specifics." Trial counsel acknowledged that the Petitioner may have testified at trial that he telephoned 911 prior to the shooting. Post-conviction counsel asked if introduction of Petitioner's telephone records would have bolstered the Petitioner's testimony, and trial counsel said he did not remember the importance of the records.

On cross-examination, trial counsel testified that he had been practicing law since 1997 and that he worked in criminal defense. He said that he handled several hundred cases per year, that several dozen of the cases were felonies, and that he had handled more than forty murder cases during his career. In June or July 2011, he was appointed to represent the Petitioner. The Petitioner went to trial in March 2012.

Trial counsel testified that an investigator was appointed to assist the defense. Counsel filed discovery motions, met with the Petitioner, and "thought we had a very good case." The victim had assaulted the Petitioner previously, and counsel and the Petitioner discovered the victim also had a prior conviction of reckless aggravated assault. However, the Petitioner testified at trial that he had no knowledge of the victim's assaulting anyone. Moreover, the trial court ruled that the victim was acting in self-defense when she stabbed Joy Jones. Thus, the trial court found that the victim's prior conviction was inadmissible. Counsel said he did not know why the Petitioner testified "in the way that he did."

The Petitioner testified that trial counsel met with him only one time before trial but that an investigator met with him about three times. The Petitioner walked with a limp and wore special shoes, and he told counsel about his physical disability. The Petitioner said that there were some witnesses to the incident in which the victim hit him with the brick. However, counsel never asked the Petitioner about the witnesses, so the Petitioner never told counsel about them. At the time of the shooting, the Petitioner knew Joy Jones but did not know about the victim's stabbing Jones. The Petitioner said the subject of Jones never came up between him and counsel. Counsel and the Petitioner discussed the Petitioner's proposed testimony before trial, but the Petitioner's knowledge of the victim's prior conviction never came up in their trial preparation. The Petitioner said that if counsel had called witnesses to testify about the victim's prior violence against him or the victim's prior conviction, the jury would have considered him more credible.

On cross-examination, the Petitioner testified that the victim had a box cutter in her hand before the shooting but that he did not see it when she came inside his home. He acknowledged that the medical examiner testified that the victim had cocaine in her system at the time of the shooting. He also acknowledged that he shot an unarmed woman.

- 6 -

In a written order, the post-conviction court denied the petition for post-conviction relief. As to the Petitioner's claim that counsel was ineffective for failing to introduce evidence of the victim's prior conviction of reckless aggravated assault, the court found that the Petitioner was not entitled to relief because this court concluded that the trial court properly excluded the evidence. As to the Petitioner's claim that counsel was ineffective for failing to introduce evidence of the victim's prior acts of violence against him, the court found that he was not entitled to relief because the Petitioner presented evidence through his own testimony that the victim had hit him in the head with a brick, had tried to stab him, and had shoved him against the corner of his house. The court noted that the Petitioner failed to present Joy Jones or any of the witnesses to the prior acts of violence at the evidentiary hearing. Regarding the Petitioner's claim that counsel was ineffective for failing to introduce his telephone records into evidence, the court stated that "phone records which Petitioner alleges trial counsel should have introduced are less probative of Petitioner's state of mind at the time of the shooting than Petitioner's own testimony at trial." Finally, as to the Petitioner's claim that counsel should have introduced evidence of his physical disability, the court found that "[e]vidence of Petitioner's amputated toe would not likely have convinced a jury that Petitioner needed to shoot the victim in order to ward off an attack with a comb."

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Generally, [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component. Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

First, the Petitioner contends that trial counsel was ineffective for failing to call necessary witnesses to testify at trial so that the victim's prior conviction of reckless aggravated assault and prior acts of violence against him would have been admissible. Specifically, he argues counsel should have called Joy Jones to testify about the victim's reckless aggravated assault and officers who investigated the victim's prior acts of violence.

Regarding the victim's reckless aggravated assault of Jones, the Petitioner testified at the evidentiary hearing and maintains on appeal that counsel did not prepare him to testify; therefore, he did not know counsel was going to ask him about the victim's prior conviction. That said, he acknowledges that he had no knowledge of the victim's prior acts of violence toward others at the time of the shooting. Thus, as this court properly concluded in the direct appeal of the Petitioner's convictions, evidence of the victim's prior conviction was admissible solely for the purpose of corroborating the Petitioner's testimony that the victim was the first aggressor. Nevertheless, the trial court, relying on the 2003 affidavit of complaint, found that the victim was not the first aggressor in her altercation with Jones and excluded the evidence. Had counsel presented Jones' testimony during the offer of proof at trial, the trial court could have ruled otherwise and allowed evidence of the prior conviction to corroborate the Petitioner's claim that the victim was the first aggressor on February 19. However, the Petitioner failed to present Jones at the post-conviction evidentiary hearing. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The Petitioner

also contends that counsel should have called the police officers who investigated the victim's prior acts of violence against him, rather than Officer Taylor, to testify. The Petitioner, though, also failed to present those witnesses at the hearing. Id.

Next, the Petitioner claims that trial counsel was ineffective for failing to subpoena his telephone records to corroborate his testimony that he called the Memphis Police Department's emergency and non-emergency lines during previous assaults by the victim, which would have corroborated his testimony about the victim's prior acts of violence against him. Again, the Petitioner failed to present the records at the hearing. Id.

Finally, the Petitioner claims that trial counsel was ineffective for failing to present evidence of his clubfoot and the extent to which it hindered his ability to walk, which would have bolstered his claim that he shot the victim out of fear. Initially, we note that we are puzzled as to whether the Petitioner is claiming that he was physically disabled due to the amputation of his big toe or his having a clubfoot. Although the Petitioner alleged in his amended petition for post-conviction relief and alleges in his appellate brief that he had a clubfoot, post-conviction counsel's questions at the evidentiary hearing suggested that the Petitioner was disabled due to his missing a big toe. In any event, trial counsel testified at the hearing that while the Petitioner may have had a "strange" gait, he did not remember "the toe specifics." Moreover, the Petitioner never testified at the hearing that his clubfoot or missing big toe affected his mobility so that he was unable to get away from the victim. He also never presented any medical evidence to that regard. Thus, we conclude that the post-conviction court properly denied his petition for post-conviction relief.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE